UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GLEN COPEN, | ) Case No. 5:18CV1193 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) MEMORANDUM AND ORDER |

Plaintiff Glen Copen ("Copen" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the Commissioner's final decision is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is REVERSED and this matter is REMANDED to defendant for further proceedings consistent with this Opinion.

I. PROCEDURAL HISTORY

On March 2, 2015, Copen filed applications for a period of disability and DIB, and for SSI benefits, with both applications alleging disability beginning January 1, 2013. (R. 11, Transcript ("tr."), at 15, 230-231, 232-235, 257-259, 260-267.) Copen subsequently amended the onset date to March 2, 2015. (R. 11, tr., at 36, 247.) Copen's applications were denied

initially and upon reconsideration. (R. 11, tr., at 80-96, 97-113, 114-115, 116-129, 130-143, 144-145.) Thereafter, Copen filed a request for a hearing before an administrative law judge ("ALJ.") (R. 11, tr., at 178-179.)

The ALJ held the hearing on April 19, 2017. (R. 11, tr., at 30-76.) Copen appeared at the hearing, was represented by counsel, and testified. (*Id.* at 32, 37-66.) A vocational expert ("VE") attended the hearing and provided testimony. (*Id.* at 32, 66-73.) The ALJ issued the decision on June 21, 2017, and determined that Copen was not disabled. (R. 11, tr., at 15-24; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).) The Appeals Council denied Copen's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 11, tr., at 1-4.)

Copen seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Copen alleges the ALJ erred when considering the opinions from various providers and when evaluating the plaintiff's symptoms. (R. 14, PageID #: 715.)

## II. PERSONAL BACKGROUND INFORMATION

Copen was born in 1968, and was 44 years old on the alleged disability onset date. (R. 11, tr., at 23, 37, 230.) Accordingly, he was considered a younger individual age 18-49 for Social Security purposes. *See* 20 C.F.R. §§ 404.1563, 416.963. He has a high school education and is able to communicate in English. (R. 11, tr., at 23, 260, 262.) Copen has past work as a warehouse worker, hand trolley operator, and production line assembly. (R. 11, tr., at 67-68.)

2

III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Copen's brief alleging error by the ALJ. Copen filed applications for a period of disability and DIB, and an application for SSI benefits on March 2, 2015. (R. 11, tr., at 15, 230-231, 232-235.) He listed the physical or mental conditions that limit his ability to work as "depression, bipolar, back pain, knee pain, tramadol." *Id.* at 261.

State agency reviewing physician Stephen Sutherland, M.D., prepared a physical RFC assessment on May 11, 2015. (R. 11, tr., at 89-91, 106-108.) Dr. Sutherland determined Copen can perform light work, with the ability to stand or walk about six hours, and to sit for six hours, of an eight-hour workday. *Id.* at 89-90. The claimant's ability to push or pull is unlimited, other than as shown for the lift and carry limits. *Id.* at 90. The doctor opined that Copen is limited to light exertional work due to multilevel degenerative canal stenosis and disc herniation leading to canal narrowing. *Id.* The doctor stated that Copen can frequently climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. He can frequently balance, kneel, or crouch, and occasionally stoop or crawl. *Id.* Dr. Sutherland did not find the need for any manipulative, visual, or communicative limitations. *Id.* Dr. Sutherland opined that Copen needed to avoid concentrated exposure to vibration (that would exacerbate pain), and hazards such as dangerous moving machinery and unprotected heights (due to decreased protective reflexes). *Id.* at 91. On

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

reconsideration on October 6, 2015, state agency reviewing physician Teresita Cruz, M.D., concurred with Dr. Sutherland's physical RFC. (R. 10, tr., at 123-125, 137-139.)

On July 29, 2015, Sudhir Dubey, PsyD., conducted a consultative clinical interview, and completed a disability assessment report. (R. 11, tr., at 501-507.) Dr. Dubey reviewed claimant's SSA report and encounter forms, and progress notes from March 2015. *Id.* at 501. Copen reported that he had first been treated for depression, anxiety and bipolar disorder in 1991, including a history of psychiatric hospitalizations. *Id.* at 502. His current treatment for depression and bipolar disorder, began in 1995, and included medication and therapy with a counselor. *Id.* Dr. Dubey's observed that Copen's appearance and behavior were unremarkable, as was the flow of conversation, thought processes and comprehension. *Id.* at 504. Although claimant reported trouble concentrating, the psychologist did not observe any trouble concentrating during the evaluation. *Id.* Dr. Dubey assessed that Copen's level of cognitive functioning was in the average range. *Id.* The psychologist indicated that Copen was able to complete a range of daily activities without assistance. *Id.*

Dr. Dubey indicated that Copen's symptoms were stable and unlikely to change. (R. 11, tr., at 505.) Copen reported symptoms of anxiety in crowds and public settings. *Id.* at 502-503, 505. The psychologist's assessment was Generalized Anxiety Disorder, and Depressive Disorder, NOS. *Id.* at 506. Dr. Dubey's functional assessment indicated that Copen would be able to understand, remember, and carry out simple, as well as multi-step, instructions independently in a work setting, and he could maintain persistence and pace. *Id.* Assessing claimant's mental ability and limitations in responding appropriately to work pressures in a work setting, Dr. Dubey indicated that Copen had reported issues dealing with work pressure, as a

4

result of depression and anxiety. (R. 11, tr., at 507.) The psychologist stated that Copen reported he was able to meet basic job expectations, and that he had not had an EAP referral or mental health treatment for work related problems. Although Copen's history of interactions with co-workers and supervisors was reported to be good, the psychologist determined that Copen "will have many issues dealing with co-workers and supervisors" and "dealing with work pressure" based on "possible problems stemming from mood related problems leading to associated frustration for the claimant" and others. *Id.*

State agency reviewing psychologist, Richard J. Hamersma, Ph.D., determined on September 1, 2015, that Copen had moderate difficulties maintaining social functioning, as well as maintaining concentration, persistence or pace, but no restrictions in daily living activities. (R. 11, tr., at 87, 104 (psychiatric review technique).) The psychologist completed a mental residual functional capacity assessment, in which he found that Copen was moderately limited in his ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 92, 109. Dr. Hamersma stated that Copen can complete simple and multistep tasks. *Id.* He indicated that Copen was moderately limited in his ability to interact appropriately with the general public (*id.* at 93, 110); and claimant "would perform optimally in a setting that requires minimal interaction. He can relate adequately on a superficial basis." *Id.* Dr. Hamersma also indicated that Copen was moderately limited in his ability to respond appropriately to changes in the work setting. *Id.* "He can adapt to a setting in which duties are routine and predictable." *Id.*

State agency reviewing psychologist, Deryck Richardson, Ph.D., upon reconsideration dated October 16, 2015, adopted Dr. Hamersma's psychiatric review technique findings (mild restriction of activities of daily living, and moderate difficulties maintaining social functioning, and maintaining concentration, persistence or pace). (R. 11, tr., at 120.) Dr. Richardson's mental RFC assessment was also identical with Dr. Hamersma's assessment. *Id.* at 125-127.

On February 27, 2017, Neal Manning, M.D., completed a medical statement regarding Copen's physical abilities to do work-related activities. (R. 11, tr., at 617-618.) Dr. Manning indicated that Copen's ability to lift and carry were affected by his impairments including hernias, repaired four times, back and knee pain. *Id.* at 617. The doctor did not specify the amount of weight that Copen could lift or carry, only that he could do so for 10-15 minutes at a time, for a maximum of 15 minutes. *Id.* Dr. Manning opined that Copen could stand or walk for 2-3 hours in an 8-hour workday, for 15 minutes at a time. *Id.* The doctor determined that the claimant could sit for a total of 4 hours in an 8-hour workday, for 30 minutes at a time, because of his low back pain and knee pain. *Id.* Copen could never climb, stoop, crouch, kneel, or crawl, and occasionally balance, again because of his low back and knee pain. *Id.* Dr. Manning indicated that temperature extremes, dust, fume, and humidity would cause Copen to have trouble breathing. *Id.*

Dr. Manning's opinion indicated that Copen would miss work more than four days per month due to pain or fatigue. (R. 11, tr., at 618.) The doctor would expect Copen to be off task over 20% of an 8-hour workday due to pain or fatigue. *Id.* If the claimant was working a sedentary job, Dr. Manning indicated Copen would need to lie down two hours or more during an 8-hour workday. *Id.* Copen would only be able to use his hands 50% of the workday. *Id.*

6

The doctor indicated Copen would need to take unscheduled breaks about four times per day. *Id.* The medical findings that support Dr. Manning's opinion were listed as: "Chronic low back pain, knee pain due to arthritis, depression with anxiety." *Id.* Dr. Manning reported that Copen: "Has tried working a sedentary job, but was not able to tolerate from a physical standpoint. Has chronic pain worsened with sitting/standing. Also has had difficulty with anxiety and depression, affecting ability to [illegible]." *Id.*

On March 30, 2017, Bill Cervenik, LPCC-S[2], completed a Medical Source Assessment (Mental) regarding Copen. (R. 11, tr., at 649-651.) Cervenik indicated that Copen would not be able to perform activities within a schedule, or to maintain regular attendance or be punctual on a regular, reliable, and sustained schedule. *Id.* at 649. The counselor also marked that the claimant would not be able to complete a normal workday without interruptions from psychologically based symptoms, or to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Cervenik indicated that Copen would not be able to respond appropriately to changes in the work setting. *Id.* at 650. Cervenik further opined that the claimant would be unable to: understand and remember detailed instructions, carry out detailed instructions, or maintain attention and concentration for extended periods of time more than 20 percent of the workday- workweek. *Id.* at 649. Copen would also be unable to work in coordination with, or in proximity to, others without being distracted by them, or to interact appropriately with the general public, more than 20 percent of the workday-workweek. *Id.*

---

[2] LPCC-S = Licensed Professional Clinical Counselor, with a training supervision designation.

Cervenik indicated that Copen would miss work more than four days per month due to his impairments or treatment. (R. 11, tr., at 650.) The counselor indicated that Copen would be off task over 20% of an 8-hour workday due to his mental health symptoms; and he would need unscheduled breaks more than four times per day, for more than 15 minutes. *Id.* Cervenik stated that his opinion was supported by Copen's treatment since 2007, and his diagnosis with bipolar disorder, although he noted more recently claimant has had depression. *Id.* at 651. "Overall mood instability makes it difficult for him to concentrate on tasks and maintain consistent attendance." *Id.* The counselor also noted that Copen's chronic pain has exacerbated his depressive symptoms. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his June 21, 2017, decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder; bipolar disorder; anxiety disorder; obesity; left knee osteoarthritis; lumbar degenerative disc disease; bilateral hip replacement (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasional use of foot controls bilaterally; occasional climbing ramps and stairs; never climb

ladders/ropes/scaffolds; frequent balancing, kneeling, or crouching; occasional stooping or crawling; avoid unprotected heights, moving mechanical parts, commercial driving, or vibration; simple work-related decisions; simple routine tasks not at a production rate pace; no quotas; tolerate few changes in a routine work setting; occasional interactions with co-workers and the public, and frequent interactions with supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on *** 1968, and was 44 years old, which is defined a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 11, tr., at 17, 18, 19, 22, 23, 24.)

## V. DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or

9

that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399,

405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Copen argues that the ALJ committed error by failing to articulate valid reasons for rejecting the opinions from his treating provider Dr. Manning, (Tr. 617), the psychological consultative evaluator, Sudhir Dubey, (Tr. 501), and treating therapist, Bill Cervenik, (Tr. 649).

11

(R. 14, PageID #: 715.). Claimant also contends the ALJ erred when evaluating the consistency of the plaintiff's symptoms under SSR 16-3p. *Id.*

## A. Treating Source Opinion

In his first assignment of error, Copen argues that the ALJ failed to properly evaluate his treating source's opinion. (R. 14, PageID #: 715, 729-731.) Specifically, he contends that the ALJ failed to state valid reasons for rejecting the opinions from his treating provider Dr. Manning. *Id.* at 729-731.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner,* 710 F.3d 365, 375 (6th Cir. 2013); *Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," reflects that physicians who have a long-standing treatment relationship with an individual are often able to provide a more complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley,* 581 F.3d at 406; *Wilson,* 378 F.3d at 544. In other words, treating physicians' opinions

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.,* 20 C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.") Plaintiff's claim was filed before March 27, 2017.

are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record and they must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion as well as the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Moreover, an ALJ must evaluate each medical opinion in the record. *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c), 416.927(c). State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e), 416.913a(b)(1); 416.927(e). Although the ALJ generally accords more weight to a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith*, 482 F.3d at 875.

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see generally Gayheart*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis*, 2011 WL 915719, at *3.

The ALJ considered the February 2017 opinion of Dr. Manning, and gave it little weight. (R. 11, tr., at 22, citing *id.* at 617-618.) After summarizing the limitations set forth in the doctor's opinion, the ALJ stated:

> I afford the treating physician's opinion little weight as it overstates the claimant's physical limitations. The claimant's lumbar disorder and history of hip replacement certainly affect's the claimant's ability to perform work-related activity but not to the extent that he would be off-task or absent more than a reasonable amount during a month or workday.

*Id.* Copen asserts that the ALJ's analysis of Dr. Manning's opinion falls short of what's required under 20 C.F.R. § 1527, because the ALJ did not give good reasons for failing to credit the treating physician's opinion. (R. 14, PageID #:730-731.) The court agrees.

As discussed earlier, the ALJ must provide good reasons for discounting evidence of disability submitted by the treating physician. Those good reasons must be supported by evidence in the record, and must be sufficiently specific to make clear the reasons for the weight assigned to the treating physician's opinion. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Vance*, 2008 WL 162942, at *3. Moreover, even when a treating source's opinion is

14

not entitled to controlling weight, the ALJ must still support the weight assigned to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c).

The record indicates that Copen treated extensively with Dr. Manning since at least February 2015. *See, e.g.*, R. 11, tr., at 355, 361, 363, 574, 611; *see also* 617-618 (opinion). The ALJ's cursory analysis of Dr. Manning's opinion is not supported by citations to the record, nor does the decision contain sufficiently specific reasons for assigning the doctor's opinion little weight, beyond merely concluding that Dr. Manning "overstates the claimant's physical limitations." *Id.* at 22.

Having assigned the treating physician's opinion less than controlling weight, the ALJ was then required to assess that opinion as he would any medical opinion evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c). But there is no indication in the decision that the ALJ considered the length of the treatment relationship with Dr. Manning, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see generally Gayheart*, 710 F.3d at 379.

The Commissioner attempts to supplement the ALJ' decision with additional record citations and explication. (R. 16, PageID #: 753-754.) However, this court is required to review the decision of the ALJ "solely by the grounds invoked by the agency," not based on post hoc rationalizations. *Simpson v. Commissioner*, No. 08-3651, 2009 WL 2628355, at *10 (6th Cir. Aug. 27, 2009); *see also Johnson v. Commissioner*, 193 F. Supp. 3d 836, 847 (N.D. Ohio 2016) (citing *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993)). Here, the ALJ's decision failed to

15

provide a "reasoned basis" for rejecting the treating physician's opinions. *See Hall v. Commissioner*, No. 04-5572, 2005 WL 2139890, at \*5 (6th Cir. Sept. 2, 2005) (citing *Jones*, 336 F.3d at 477). A more thorough analysis of the treating physician's opinions is required. The decision is remanded for further evaluation of treating physician Dr. Manning's opinion and, if it is not given controlling weight, that provides "good reasons" for discounting the opinion and includes a sufficiently specific explanation for the weight assigned. *See, e.g.*, *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 545). The court, however, is careful to note that it expresses no opinion on the weight, if any, the ALJ should afford to Dr. Manning's opinion.

## B. Plaintiff's Remaining Arguments

Plaintiff's second and third assignments of error challenge the ALJ's assessment of various medical sources and the fourth assignment of error claims the ALJ erred when considering his symptoms. Because the court is remanding this action based on the Plaintiff's first assignment of error, the court declines to address these arguments in the interest of judicial economy. While the court does not express an opinion regarding the merits of Plaintiff's remaining arguments and whether the underlying ALJ's decision was sufficient in such regards, given the need for remand, a new decision should be mindful of the arguments raised by the Plaintiff.

## VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is not supported by substantial evidence and must be remanded. The ALJ's decision did not provide good reasons for rejecting the treating physician Dr. Manning's opinion or sufficiently explain the reasons for the weight

the decision assigned to such opinion.  The decision of the Commissioner, therefore, is REVERSED and REMANDED to defendant for further proceedings consistent with this Opinion.

                                                    <u>s/ David A. Ruiz</u>
                                                    David A. Ruiz
                                                    United States Magistrate Judge

Date:  <u>September 16, 2019</u>